[No. D018950. Fourth Dist., Div. One. Oct. 20, 1993.]

PARALIFT, INC., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
DANIELLE DAVIDA LEVIN, a Minor, etc., et al., Real Parties in
Interest.

**COUNSEL**

Ralph S. Greer for Petitioner.

Neil, Dymott, Perkins, Brown & Frank, Michael I. Neil and Tim S. McClain for Respondent.

Singleton & Dean, Peter L. Dean and Terry Singleton for Real Parties in Interest.

## OPINION

HUFFMAN, J.—Paralift, Inc. (Paralift) is a defendant in a wrongful death action filed by Danielle Davida Levin by and through her guardian ad litem Lisa Smalley, Stanley Levin, Estelle Levin and James T. Rinn, representative of the estate of Alan David Levin. Paralift seeks a writ of mandate directing the trial court to grant its motion for summary judgment on either of two theories: A release executed by the decedent, Alan David Levin (decedent), constitutes a complete bar to any recovery by his heirs; or, in the alternative, the trial court should have found applicable in this factual context of skydiving the doctrine of primary assumption of the risk as explained in *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696] and *Ford* v. *Gouin* (1992) 3 Cal.4th 339 [11 Cal.Rptr.2d 30, 834 P.2d 724].

We agree with Paralift that no triable issues of material fact exist with respect to the scope and legal effect of decedent's release of liability and that, by reason of this release, Paralift has no liability to plaintiffs as a matter of law. Accordingly, without reaching the issue of primary assumption of the risk in this factual context, we grant the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

Decedent was a highly qualified and licensed skydiver who had made over 900 skydives prior to the fatal jump which gave rise to this action. On July 4, 1991, decedent, as part of a four-person team of skydivers, flew on a DC-3 aircraft owned and piloted by Paralift and its personnel. The pilot flew the aircraft in accordance with the directions of a designated spotter for the jump, according to the usual skydiving procedures. Decedent exited the aircraft at an altitude of approximately 13,000 feet. Far below there was cloud cover over the Del Mar Fairgrounds, the intended area of landing for this demonstration jump. The 4 skydivers engaged in aerial maneuvers together while falling through 10,000 feet of altitude. At approximately 2,100 feet above the earth, decedent disengaged from the others and dove through cloud cover to emerge above the ocean. According to witnesses, he disconnected his parachute from his parachute harness at an altitude of

between 50 and 150 feet above the water and then was killed by the impact of his body on the surface of the water.

Approximately three years before the fatal jump, the decedent signed a release agreement with Paralift containing the following text in pertinent part:

"1.  I hereby forever RELEASE AND DISCHARGE . . . Paralift, Inc., . . . from any and all liabilities, claims, demands or causes of action that I may hereafter have for injuries and damages arising out of participation in parachuting activities, including, but not limited to, losses CAUSED BY THE PASSIVE OR ACTIVE NEGLIGENCE OF THE RELEASED PARTIES or hidden, latent, or obvious defects on the dropzone [or] in the equipment or aircraft used.

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"3.  I understand and acknowledge that parachuting activities have inherent dangers that no amount of care, caution, instruction or expertise can eliminate and I EXPRESSLY AND VOLUNTARILY ASSUME ALL RISK OF DEATH OR PERSONAL INJURY SUSTAINED WHILE PARTICIPATING IN PARACHUTING ACTIVITIES INCLUDING THE RISK OF PASSIVE OR ACTIVE NEGLIGENCE OF THE RELEASED PARTIES; or hidden, latent, or obvious defects on the dropzone or in the equipment or aircraft used.

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"8. . . . I assume the risk of injury or death upon landing, and I understand that even under the best conditions, landing is an extremely dangerous activity and many injuries occur. Based upon my independent evaluation of all the risks I REAFFIRM MY ASSUMPTION OF THE EXTREME RISK AND DANGER SET OUT IN PARAGRAPH 3 ABOVE."

This release contains numerous references to Paralift's previous theater of operations at the Perris Valley Airport, which is well inland from the location of the fatal jump, Del Mar. The release does not contain any expiration date. It makes no reference to jumps over large bodies of water or in particular weather conditions. However, one year before the fatal jump, the decedent had made four parachute jumps in the Del Mar Fairgrounds vicinity.

Decedent's heirs filed a wrongful death complaint in six causes of action alleging that Paralift was negligent in its operations and breached nondelegable duties to ensure that the parachute jumping operations were conducted

in a proper manner. As against the landowner, the State of California, premises liability was alleged. Compensatory and punitive damages were sought.

Paralift answered, raising a number of defenses, including a 13th affirmative defense alleging that the decedent was aware of the inherent danger of parachuting, "and voluntarily assumed the risk of such danger by a written instrument releasing and discharging [Paralift] from any duty of care to him." Paralift thus alleged that any recovery was barred or diminished to the extent that any damages were attributable to assumption of the risk.

Paralift brought a motion for summary judgment or, in the alternative, for summary adjudication.[1] (Code Civ. Proc., § 437c.) The motion was based on the argument that the decedent had expressly assumed the risks involved in parachuting, a sporting activity. The motion further argued a number of issues concerning a lack of duty on the part of Paralift to the decedent, based upon his assumption of the risk. Lack of proximate cause was also argued, based upon the decedent's disconnection of his canopy from his parachute harness. In support of the express release argument, Paralift pointed out that the decedent had signed the release and initialed it in 22 places. Prior to signing the document, he had witnessed a videotape explaining the waiver and advising the viewer not to sign the release until the advice of independent counsel was obtained.

In opposition to the motion, the decedent's heirs argued that the release did not apply to the skydiving operation at the Del Mar Fairgrounds, which was a public demonstration flight near an ocean area, as contrasted to the private sport parachuting operations out of the Perris Valley Airport which were the original subject of the release. The plaintiffs also argued that Paralift increased the risk of harm to the decedent by letting him out over cloud cover where the shoreline was unknown. Issues of proximate causation were also argued.

In its reply, Paralift argued that under *Hulsey* v. *Elsinore Parachute Center* (1985) 168 Cal.App.3d 333 [214 Cal.Rptr. 194], exculpatory contracts for participation in parachuting activities are not against public policy. Paralift argued that the particular release was not limited to any time, place, or type of activity on the part of Paralift.[2]

In ruling on the motion, the court made the following finding concerning the express release issues: "The written waiver does not apply to Levin's

---

[1] The summary adjudication motion was taken off calendar for procedural irregularities.
[2] Both the opposition and the reply papers discuss whether Paralift violated any federal aviation regulations when the pilot let the jumpers out near cloud cover. We need not decide

jump on July 4, 1991, over the Pacific Ocean. Defendant's exhibit 20 shows that the waiver was executed nearly three years before the fatal jump occurred. Moreover, jumps occurring over large bodies of water involve a different risk than those occurring over land. (See defendant's exhibit 17, page 284.) Levin's waiver does not mention jumps occurring over the ocean or at the intended dropzone, Del Mar Fair. The only dropzone specifically mentioned in the waiver is the Perris Valley Airport. (See defendant's exhibit 20 paragraph 8.) Paragraph 8 of the waiver shows that jumps over large bodies of water were not covered by the terms of Levin's waiver."

In its ruling, the trial court further stated that Paralift owed a duty of reasonable care to the decedent not to place him in a condition where there was a foreseeable risk of harm, i.e., not to drop him too far out over the ocean or in dangerous weather conditions likely to cause him injury. The court then made a number of other findings concerning the issues of duty, breach, and causation, finding that there were triable issues of fact on all those matters. Paralift timely petitioned for this writ of mandate. (Code Civ. Proc., § 437c, subd. (*l*).)

We issued an order to show cause and notified the parties that oral argument would be restricted to the issues presented concerning the effect of the written waiver and release form signed by the decedent. We asked the parties to submit supplemental briefing on the issue of the effect of the passage of time upon a release, where it applies to the same parties and the same activity continuing over a period of time.

## DISCUSSION

The dispositive issue before this court is whether the release applies to the fatal jump event, which took place some three years after the release was signed and in a different location than where the activities covered by the release originally began. To resolve this issue, we conduct not only a de novo examination of the moving and opposing papers to determine whether Paralift is entitled to judgment as a matter of law (*Madison* v. *Superior Court* (1988) 203 Cal.App.3d 589, 595-596 [250 Cal.Rptr. 299]), but also conduct a de novo interpretation of the release document. ■ Where, as here, no conflicting parol evidence is introduced concerning the interpretation of the document, "construction of the instrument is a question of law, and the appellate court will independently construe the writing. [Citation.]" (*Winet* v. *Price* (1992) 4 Cal.App.4th 1159, 1166 [6 Cal.Rptr.2d 554].) The threshold determination of whether a document contains ambiguities is subject to

---

whether any regulatory violations took place; as we will explain, the release was broad enough to encompass all risks of the skydiving activity.

independent review. (*Id.* at p. 1165; *Madison* v. *Superior Court, supra,* 203 Cal.App.3d at p. 598.) ■ The appellate court's objective in construing contractual language is to determine and effectuate the intention of the parties. (*Winet, supra,* at p. 1166.) "It is the outward expression of the agreement, rather than a party's unexpressed intention, which the court will enforce. [Citation.]" (*Ibid.*)

Here, the release signed by decedent is pled as one of Paralift's affirmative defenses, and is asserted to be a complete bar to any recovery by the decedent's heirs. ■ " 'It is axiomatic that a plaintiff in a wrongful death action is subject to defenses which could have been asserted against the decedent. [Citations.]' " (*Madison* v. *Superior Court, supra,* 203 Cal.App.3d at p. 600.)

The standards which a release such as this one must meet are well established. ■ "To be effective, a release need not achieve perfection; . . ." (*National & Internat. Brotherhood of Street Racers, Inc.* v. *Superior Court* (1989) 215 Cal.App.3d 934, 938 [264 Cal.Rptr. 44].) Thus, "[a]s long as the release constitutes a clear and unequivocal waiver with specific reference to a defendant's negligence, it will be sufficient. [Citations.] For it to be valid and enforceable, a written release exculpating a tortfeasor from liability for future negligence or misconduct must be clear, unambiguous and explicit in expressing the intent of the parties. [Citation.] If a tortfeasor is to be released from such liability the language used 'must be clear, explicit and comprehensible in each of its essential details. Such an agreement, read as a whole, must clearly notify the prospective releasor or indemnitor of the effect of signing the agreement.' [Citation.]" (*Madison* v. *Superior Court, supra,* 203 Cal.App.3d at pp. 597-598.)

■ As explained in *Knight* v. *Jewett, supra,* 3 Cal.4th at pages 308-309, footnote 4, express assumption of risk through the signing of an express agreement can properly be viewed as analogous to primary assumption of risk. The result is that the plaintiff, in advance, has given express consent to relieve the defendant of an obligation of conduct toward him, such that the defendant is relieved of legal duty to the plaintiff. (*Ibid.*) Along these lines, the court in *Saenz* v. *Whitewater Voyages, Inc.* (1990) 226 Cal.App.3d 758, 764 [276 Cal.Rptr. 672], explained: "Express assumption occurs when the plaintiff, in advance, expressly consents ' ". . . to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising *from what the defendant is to do or leave undone* . . . . The result is that . . . being under no duty, [the defendant] cannot be charged with negligence." ' [Citations.]" (*Saenz, supra,* 226 Cal.App.3d at p. 764, italics added.)

In carrying out our de novo interpretation of this release document, our inquiry must be whether the release is broad enough in scope to cover the activities on the day of the fatal jump, or whether such activities were of the type originally contemplated by the parties in entering into this agreement. (*Winet* v. *Price, supra,* 4 Cal.App.4th at p. 1166.) To decide if the release is enforceable in this factual context, we should inquire whether its enforcement would defeat the reasonable expectations of the parties to the contract. (*Hulsey* v. *Elsinore Parachute Center, supra,* 168 Cal.App.3d at p. 344.) Conceding that the passage of time alone after the signing of a release form is not dispositive (based upon this court's decision in *Winet* v. *Price, supra,* 4 Cal.App.4th 1159, in which a 15-year-old release was found enforceable), the decedent's heirs in their supplemental briefing state that the question is whether the specific language of the release, as strictly construed against the one asserting it is effective, is restricted to the activities specified in the release form. Thus, they argue, "The release signed at Perris, California, some three years before for individual sport jumping can hardly be said to be applicable to a situation where sky divers are asked to perform for a state fair near the coast over an ocean covered by the usual marine layer, away from terrain and premises described precisely in the release previously signed."

Respectfully, we disagree. First, it is not disputed that the decedent was competent to enter into such an agreement; he entered into the release under circumstances of some solemnity in which his signature and 22 sets of initials were required, and he was videotaped when signing the document. There was consideration for his agreement (i.e., his ongoing use of Paralift aircraft and pilot services), and such release agreements concerning skydiving are not contrary to public policy. (*Hulsey* v. *Elsinore Parachute Center, supra,* 168 Cal.App.3d at p. 343; Civ. Code, § 1668; see Annot., Liability for Civilian Skydiver's or Parachutist's Injury or Death (1979) 95 A.L.R.3d 1280, 1283-1284.)

Moreover, the document as signed is extremely broad in scope as to time and place, stating that the decedent "forever" released and discharged Paralift from liability for injuries arising out of participation in parachuting activities. The term "parachuting activities" is not limited by time or place, and the agreement makes no reference to any exceptions for activities over large bodies of water or other hazardous situations, including weather conditions. The evident intent of the parties was that the decedent could continue to use Paralift aircraft and pilot services on an ongoing basis for parachuting activities of a sporting nature. As the landowner, State of California, in its supplemental briefing points out, the decedent effectively reaffirmed his release and assumption of risk each time he stepped into a Paralift aircraft.

The release agreement is also very broad as to the type of risk to be assumed, including those involving hidden, latent, or obvious defects in the dropzone and equipment used. ■ As stated in *Madison* v. *Superior Court, supra,* 203 Cal.App.3d at page 601, where a participant in an activity has expressly released the defendant from responsibility for the consequences of any act of negligence, "the law imposes no requirement that [the participant] have had a specific knowledge of the particular risk which resulted in his death." (*Ibid.*) Not every possible specific act of negligence by the defendant must be spelled out in the agreement or discussed by the parties. (*Ibid.*) Where a release of all liability for *any* act of negligence is given, the release applies to any such negligent act, whatever it may have been. (*Ibid.*) "It is only necessary that the act of negligence, which results in injury to the releasor, be reasonably related to the object or purpose for which the release is given." (*Ibid.,* fn. omitted.)

■ Here, the object or purpose of the release the decedent signed in favor of Paralift was to allow him to engage in parachuting activity of a sporting nature. That is precisely the type of activity that the decedent was engaged in when he fell to his death. By his participation in the Del Mar Fairgrounds jump, the decedent showed that his intent was that such a jump was within the agreed-upon range of activities he participated in with Paralift. The year before, he had made four successful jumps in the Del Mar area. The nature of the risks of the particular jump was within the reasonable expectations of both parties. (*Hulsey* v. *Elsinore Parachute Center, supra,* 168 Cal.App.3d at pp. 341-343.) The risks of the parachuting activity stemmed from what Paralift, the defendant, was to do according to the understanding of the parties. (*Saenz* v. *Whitewater Voyages, Inc., supra,* 226 Cal.App.3d at p. 764.)

Based on all these factors, we can only conclude that the broad language of this release expressed the intent of the parties that the decedent could participate in any activities concerning skydiving carried out by Paralift, for an indefinite period after the release was signed and at any appropriate and mutually agreed-upon location. The language of the release is a clear and unequivocal waiver of liability for negligence and contains no ambiguities in expressing the intent of the parties. (*Madison* v. *Superior Court, supra,* 203 Cal.App.3d at p. 598.) Any negligence on the part of Paralift was reasonably related to the object or purpose for which the release was given. (*Id.* at p. 601.) The decedent's express release of any negligence liability on the part of Paralift binds his heirs in this action and provides Paralift with a complete defense. (*Id.* at pp. 597-600.) Based on the language of the release, it was evidently the intention of the parties that it have a broad and ongoing scope, unlimited to a certain time period, a certain geographical vicinity, or certain

weather conditions. Therefore, the release constitutes a complete defense to this action.

## Disposition

Let a peremptory writ of mandate issue, directing respondent to vacate its order denying the motion for summary judgment, and to enter a new order granting the motion and entering judgment in favor of Paralift.

Todd, Acting P. J., and Froehlich, J., concurred.