[No. H014014. Sixth Dist. Mar. 28, 1996.]

ANTHONY ALLABACH et al., Plaintiffs and Appellants, v.
SANTA CLARA COUNTY FAIR ASSOCIATION, INC., et al.,
Defendants and Respondents.

## COUNSEL

James M. Ritchey for Plaintiffs and Appellants.

Rohlff, Howie & Frischholz and James S. Gottesman for Defendants and Respondents.

## OPINION

**PREMO, Acting P. J.**—Anthony Allabach was injured by a defective barrier while he was observing a destruction derby automobile race at the Santa Clara County Fairgrounds. He and Carol Allabach then sued Santa Clara County Fair Association, Inc., Cars, Inc., California Automobile Racing Speedways, Inc., Klauers, Inc., and Santa Clara County for negligence and strict liability. The trial court granted defendants' motion for summary judgment on the basis that Anthony expressly assumed the risk of injury via a written release of liability. Plaintiffs appealed from the order. The trial court later rendered a judgment for defendants. We exercise our discretion to treat plaintiff's appeal as filed immediately after the judgment and affirm the judgment.

### APPEALABILITY

■ In California, the right to appeal is wholly statutory. (*Jordan* v. *Malone* (1992) 5 Cal.App.4th 18, 21 [6 Cal.Rptr.2d 454].) In order to exercise that right an appellant must take an appeal from a statutorily declared appealable judgment or order (Code Civ. Proc., § 904.1) and must be aggrieved by that judgment or order (Code Civ. Proc., § 902).

■ An order granting a motion for summary judgment is not among the types of orders specified in Code of Civil Procedure section 904.1. In short, "[a]n order granting a motion for summary judgment is a nonappealable preliminary order." (*Avila* v. *Standard Oil Co.* (1985) 167 Cal.App.3d 441, 445 [213 Cal.Rptr. 314].)

"For many years, this court, and most, if not all appellate courts, have repeatedly admonished appellants about the failure to make the preliminary and fundamental determination that what they are appealing from is, in fact, an appealable order or judgment. (This, of course, assumes the existence of an order or judgment.) Such admonishments being of little avail, California Rules of Court, rule 13 was amended, effective July 1, 1989, to require that every opening brief contain 'either a statement that the appeal is from a judgment that finally disposes of all issues between the parties or a statement explaining why the order or nonfinal judgment is appealable.' [¶] It is our experience that, despite the amendment of rule 13 of the California Rules of Court, parties continue to 'appeal' from nonexistent orders and judgments and/or from documents which are not even orders or judgments." (*Shpiller* v. *Harry C's Redlands* (1993) 13 Cal.App.4th 1177, 1179 [16 Cal.Rptr.2d 814], fn. omitted.)

California Rules of Court, rule 2(c), provides, in relevant part: "A notice of appeal filed prior to rendition of the judgment, but after the judge has

announced his intended ruling, may, in the discretion of the reviewing court for good cause, be treated as filed immediately after entry of the judgment."

Plaintiffs make no argument that good cause exists for invocation of California Rules of Court, rule 2(c), presumably because they failed to make the preliminary and fundamental determination that what they were appealing from was, in fact, appealable. But since the parties have briefed the merits of the case and defendants have failed to attack plaintiffs' notice of appeal, we invoke rule 2(c) in the interests of judicial economy.

### SCOPE OF REVIEW

■ " 'An action in negligence requires a showing that the defendant owed the plaintiff a legal duty, that the defendant breached the duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff. [Citations.] ■ On review of a summary judgment in favor of the defendant, we review the record de novo to determine whether the defendant has conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial. [Citation.]' [Citation.]" (*Pamela W.* v. *Millsom* (1994) 25 Cal.App.4th 950, 956 [30 Cal.Rptr.2d 690].)[1]

■ "The existence of a duty is a question of law for the court." (*Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674 [25 Cal.Rptr.2d 137, 863 P.2d 207].) So is the interpretation of a written instrument where the interpretation does not turn on the credibility of extrinsic evidence. (*Delucchi* v. *County of Santa Cruz* (1986) 179 Cal.App.3d 814, 820 [225 Cal.Rptr. 43].) It therefore follows that we must independently determine whether the release in this case negated the duty element of plaintiffs' causes of action. (*Paralift, Inc.* v. *Superior Court* (1993) 23 Cal.App.4th 748, 754 [29 Cal.Rptr.2d 177].)

■ Plaintiffs appear to obfuscate the scope of review. They argue that this case implicates the doctrine of assumption of risk. They pose that Anthony was injured, not because of a risk inherent in the sport he was witnessing, but by a defective barrier; and that he did not have actual knowledge and appreciation of the danger. They suggest that it is a jury question whether assumption of risk bars their recovery. They principally rely on *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696].

---

[1]The duty element likewise exists within strict liability tort theories as strict liability is merely a species of negligence that is "viewed as a 'short cut' to liability where negligence may be present but may be difficult to prove." (*Milwaukee Electric Tool Corp.* v. *Superior Court* (1993) 15 Cal.App.4th 547, 556 [19 Cal.Rptr.2d 24].)

"In *Knight*, a three-judge plurality of the state Supreme Court (with a fourth, Justice Mosk, concurring in the result) effectively abolished the previous judicial categorization of assumption of the risk into 'reasonable' and 'unreasonable' forms for purposes of determining whether the doctrine has been subsumed by the comparative negligence principles adopted by the court in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226] (*Li*). [Citation.] After analyzing *Li* and the authorities it cites, *Knight* declared that survival of the doctrine as a defense in any given fact situation should instead turn on the distinction between 'primary' and 'secondary' assumption of risk. Primary assumption of risk according to *Knight* refers to 'those instances in which the assumption of risk doctrine embodies a legal conclusion that there is "no duty" on the part of the defendant to protect the plaintiff from a particular risk . . . .' Secondary assumption involves 'those instances in which the defendant does owe a duty of care to the plaintiff but the plaintiff knowingly encounters a risk of injury caused by the defendant's breach of that duty . . . .' [Citation.] [¶] *Knight* held that 'the question whether the defendant owed a legal duty to protect the plaintiff from a particular risk of harm does not turn on the reasonableness or unreasonableness of the plaintiff's conduct, but rather on the nature of the activity or sport in which the defendant is engaged and the relationship of the defendant and the plaintiff to that activity or sport.' [Citation.]" (*Cohen* v. *McIntyre* (1993) 16 Cal.App.4th 650, 653-654 [20 Cal.Rptr.2d 143].)

In *Knight*, the defendant stepped on the plaintiff's hand during the course of a touch football game in which both were participating players. The court upheld a defense summary judgment explaining that defendants generally have no legal duty to eliminate or protect a plaintiff from risks inherent in a sporting activity. It noted that "liability properly may be imposed on a participant only when he or she intentionally injures another player or engages in reckless conduct that is totally outside the range of the ordinary activity involved in the sport." (*Knight* v. *Jewett, supra*, 3 Cal.4th at p. 318.)

We agree that the doctrine of assumption of risk applies to this case in the sense that it represents the other side of the duty coin. But *Knight* was an implied assumption of risk case and therefore different from cases involving an express or written release. (See 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, §§ 1106-1107, pp. 518-520.) *Knight*'s direction about analyzing the nature of the activity or sport in which the defendant is engaged and the relationship of the defendant and the plaintiff to that activity or sport must be taken in the implied assumption of risk context. Stated another way, there is no need to analyze an activity and the relationship of the parties to that activity when the parties have expressly agreed in advance that assumption of risk applies to an activity and their relationship to that activity.

*Knight* itself recognizes that implied assumption cases are different from express assumption cases: "Although in the academic literature 'express assumption of risk' often has been designated as a separate, contract-based species of assumption of risk distinct from both primary and secondary assumption of risk (see, e.g., Prosser & Keeton on Torts (5th ed. 1984) § 68, p. 496), cases involving express assumption of risk are concerned with instances in which, as the result of an express agreement, the defendant owes no duty to protect the plaintiff from an injury-causing risk. Thus in this respect express assumption of risk properly can be viewed as analogous to primary assumption of risk. One leading treatise describes express assumption of risk in the following terms: 'In its most basic sense, assumption of risk means that the plaintiff, in advance, has given his *express* consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone . . . . *The result is that the defendant is relieved of legal duty to the plaintiff; and being under no duty, he cannot be charged with negligence.*' (Prosser & Keeton on Torts, *supra*, § 68, pp. 480-481, fn. omitted, second italics added.) [¶] Since *Li,* California cases uniformly have recognized that so long as an express assumption of risk agreement does not violate public policy (see, e.g., *Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92, 95-101 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693]), such an agreement operates to relieve the defendant of a legal duty to the plaintiff with respect to the risks encompassed by the agreement and, where applicable, to bar completely the plaintiff's cause of action. (See, e.g., *Madison* v. *Superior Court* (1988) 203 Cal.App.3d 589, 597-602 [250 Cal.Rptr. 299], and cases cited.)" (*Knight* v. *Jewett, supra,* 3 Cal.4th at pp. 308-309, fn. 4.)

██ ██ We therefore emphasize and reiterate: "The dispositive issue before this court is whether the release applies to the [accident] . . . . To resolve this issue, we conduct not only a de novo examination of the moving and opposing papers to determine whether [defendants are] entitled to judgment as a matter of law [citation], but also conduct a de novo interpretation of the release document. Where, as here, no conflicting parol evidence is introduced concerning the interpretation of the document, 'construction of the instrument is a question of law, and the appellate court will independently construe the writing. [Citation.]' [Citation.]" (*Paralift, Inc.* v. *Superior Court, supra,* 23 Cal.App.4th at p. 754.)

UNDISPUTED MATERIAL FACTS

Anthony attended the race to see his brother compete. He chose to watch it from the pit area. Before he could do so he signed a document like those

he had signed when participating as a pit member. The document was entitled, "RELEASE AND WAIVER OF LIABILITY. ASSUMPTION OF RISK AND INDEMNITY AGREEMENT."

The agreement provided, in relevant part: "IN CONSIDERATION of being permitted to compete, officiate, observe, work for, or participate in any way in the EVENT(s) or being permitted to enter for any purpose any RESTRICTED AREA (defined as any area requiring special authorization, credentials, or permission to enter or any area to which admission by the general public is restricted or prohibited), EACH OF THE UNDERSIGNED, for himself, his personal representative, heirs, and next of kin:

". . . . . . . . . . . . . . . . . . . . . . . . . .

"2. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE [promoters, participants, etc. (releasees)] . . . FOR ANY AND ALL LOSS OR DAMAGE, AND ANY CLAIM OR DEMANDS THEREFOR ON ACCOUNT OF INJURY . . . ARISING OUT OF OR RELATED TO THE EVENT(s), WHETHER CAUSED BY THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE.

"3. HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS the Releasees and each of them FROM ANY LOSS, LIABILITY, DAMAGE, OR COST they may incur arising out of or related to the EVENT(s) WHETHER CAUSED BY THE NEGLIGENCE OF THE RELEASEES OR OTHERWISE.

"4. HEREBY ASSUMES FULL RESPONSIBILITY FOR ANY RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE arising out of or related to the EVENT(s) whether caused by the NEGLIGENCE OF RELEASEES or otherwise.

"5. HEREBY acknowledges that THE ACTIVITIES OF THE EVENT(s) ARE VERY DANGEROUS and involve the risk of serious injury and/or death and/or property damage. Each of THE UNDERSIGNED also expressly acknowledges that INJURIES RECEIVED MAY BE COMPOUNDED OR INCREASED BY NEGLIGENT RESCUE OPERATIONS OR PROCEDURES OF THE RELEASEES.

"6. HEREBY agrees that this Release and Waiver of Liability, Assumption of Risk and Indemnity Agreement extends to all acts of negligence by the Releasees, INCLUDING NEGLIGENT RESCUE OPERATIONS and is intended to be as broad and inclusive as is permitted by the laws of the Province or State in which the Event(s) is/are conducted and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect.

"I HAVE READ THIS RELEASE AND WAIVER OF LIABILITY, ASSUMPTION OF RISK AND INDEMNITY AGREEMENT, FULLY UNDERSTAND ITS TERMS, UNDERSTAND THAT I HAVE GIVEN UP SUBSTANTIAL RIGHTS BY SIGNING IT,

AND HAVE SIGNED IT FREELY AND VOLUNTARILY WITHOUT ANY INDUCE-MENT, ASSURANCE, OR GUARANTEE BEING MADE TO ME AND INTEND MY SIGNATURE TO BE A COMPLETE AND UNCONDITIONAL RELEASE OF ALL LIABILITY TO THE GREATEST EXTENT ALLOWED BY LAW."

Anthony also signed a pit pass given to him when he first entered. This pass stated: "I hereby release speedway owner, operator, promoter, sanction-ing body, and any other person or persons connected with the race meet for which this Pit Permit has been issued from all liability for personal injury or property damage, whether arising from claims of negligence, gross negli-gence, or from any other cause, while preparing, practicing, qualifying or participating in or attending said race meet. I am not an employee of the speedway owner, operator, or promoter but a [¶] [Contestant, non-contestant, guest]. [¶] The permit is subject to the terms and conditions of the 'Release' executed by the undersigned person this permit is issued. [¶] This permit is not assignable and is a _____ license revocable without notice at the pleasure of the sanctioning body or promoter."

During the race, an automobile struck a protective barrier which served to separate the pit area from the race track. The barrier tipped over, crushing Anthony's foot and leg.

## DISCUSSION

■ "The standards which a release such as this one must meet are well established. 'To be effective, a release need not achieve perfection. . . .' [Citation.] Thus, '[a]s long as the release constitutes a clear and unequivocal waiver with specific reference to a defendant's negligence, it will be suffi-cient. [Citations.] For it to be valid and enforceable, a written release exculpating a tortfeasor from liability for future negligence or misconduct must be clear, unambiguous and explicit in expressing the intent of the parties. [Citation.] If a tortfeasor is to be released from such liability the language used "must be clear, explicit and comprehensible in each of its essential details. Such an agreement, read as a whole, must clearly notify the prospective releasor or indemnitor of the effect of signing the agree-ment." [Citation.]' [Citation.]" (*Paralift, Inc.* v. *Superior Court, supra,* 23 Cal.App.4th at p. 755.)

■ Plaintiffs argue that the release in this case does not bar this action because Anthony was not in a restricted area when the accident occurred, but in an area open to the general public. They cite their evidence that anyone could enter the pit area so long as they paid an $18 fee; they also credit the words of the release limiting its application to those entering any restricted

area, i.e., any area "requiring special authorization, credentials, or permission to enter or any area to which admission by the general public is restricted or prohibited."

Plaintiffs ignore, however, that the pit area required special authorization, credentials, or permission to enter: no one could enter without a pit pass; and the pit pass signified that permission to enter was granted because the party possessing the pit pass had signed the pass and the release. That the pit area was open to the general public is a generalization that neglects to take into account that those members of the general public who decline to sign a release will not be given permission to be in the pit area.

Plaintiffs next argue that the release should not be enforced because it is a contract of adhesion and Anthony did not foresee the type of accident that happened to him. They cite no authority, however, for such a proposition in the context of an ordinary liability release. And the cases have consistently held that ordinary releases are valid unless they implicate public policy. (*McAtee* v. *Newhall Land & Farming Co.* (1985) 169 Cal.App.3d 1031, 1034 [216 Cal.Rptr. 465].) Although plaintiffs argue that public policy is implicated in this case, they make no reasoned argument beyond what is inherent in any case where negligence causes an injury during a hazardous recreational activity and the injury must go uncompensated because of a release.

"In cases arising from hazardous recreational pursuits, to permit released claims to be brought to trial defeats the purpose for which releases are requested and given, regardless of which party ultimately wins the verdict. Defense costs are devastating. Unless courts are willing to dismiss such actions without trial, many popular and lawful recreational activities are destined for extinction." (*National & Internat. Brotherhood of Street Racers, Inc.* v. *Superior Court* (1989) 215 Cal.App.3d 934, 938 [264 Cal.Rptr. 44].)

DISPOSITION

The judgment is affirmed.

Elia, J., and Wunderlich, J., concurred.

Appellants' petition for review by the Supreme Court was denied June 19, 1996.