Opinion
 

 ORTEGA, J.
 

 In this slip-and-fall case, defendant YMCA of Metropolitan Los Angeles petitions for extraordinary writ review of an order denying its motion for summary judgment. The trial court agreed with plaintiff Mary Clark that the release she signed is invalid because it is against the public interest
 
 (Tunkl
 
 v.
 
 Regents of University of California
 
 (1963) 60 Cal.2d 92 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693]). We issue the peremptory writ of mandate and direct the trial court to enter summary judgment for defendant.
 

 Facts
 

 On March 14, 1995, plaintiff, then age 73, went to the Torrance YMCA for its “Senior Program” which provided lunch for $1.75. Prior to lunch, plaintiff walked by tables displaying jewelry and other items for the Senior
 
 *25
 
 Program participants to purchase. “[T]he display tables were set up near the edge of a series of descending steps leading to a circular fire ring at the center of the courtyard area." Plaintiff walked around the back of one of the tables and fell down the steps, injuring herself.
 

 The YMCA requires participants in the Senior Program to sign, once a year, a release form entitled “Release and Waiver of Liability and Indemnity Agreement." (Some caps, omitted.)
 
 [1]
 
 On February 14, 1995, one month
 
 *26
 
 before the accident, plaintiff signed such a release form. In it, she promised to release, waive, discharge and not sue the YMCA for any personal injury resulting from the YMCA’s negligence regarding its premises, facilities, or equipment. She also agreed to assume full responsibility for any personal injury resulting from the YMCA’s negligence while she used the YMCA’s premises, facilities, or equipment.
 

 On March
 
 11,1996,
 
 plaintiff filed a complaint against the YMCA, seeking personal injury damages for its allegedly hazardous and negligent placement of the display tables near the edge of the steps. Following routine pretrial discovery, the YMCA moved for summary judgment, contending the complaint was barred by the release form signed by plaintiff. (Code Civ. Proc., § 437c.)
 

 In opposition to the motion, plaintiff asserted the release form was invalid under Civil Code section 1668, which provides: “All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.” The trial court agreed with plaintiff and denied the motion. This petition for extraordinary writ relief followed. We issued an order to show cause, ordered additional briefing, and heard oral argument.
 

 Discussion
 

 The dispositive issue is whether the release form is invalid. “To resolve this issue, we conduct not only a de novo examination of the moving and opposing papers to determine whether [defendant] is entitled to judgment as a matter of law [citation], but also conduct a de novo examination of the release document. Where, as here, no conflicting parol evidence is introduced concerning the interpretation of the document, ‘construction of the instrument is a question of law, and the appellate court will independently construe the writing. [Citation.]’ [Citation.]”
 
 (Paralift, Inc.
 
 v.
 
 Superior Court
 
 (1993) 23 Cal.App.4th 748, 754 [29 Cal.Rptr.2d 177].)
 

 An exculpatory adhesion contract may be said to violate public policy when it exhibits some but not necessarily all of the following factors enumerated by the California Supreme Court in
 
 Tunkl
 
 v.
 
 Regents of University of California, supra,
 
 60 Cal.2d 92: “[1] It concerns a business of a type generally thought suitable for public regulation. [2] The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public. [3] The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member
 
 *27
 
 coming within certain established standards. [4] As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services. [5] In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence. [6] Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents.”
 
 {Id.
 
 at pp. 98-101, fns. omitted.)
 

 An identical release form previously was upheld in
 
 Randas
 
 v.
 
 YMCA of Metropolitan Los Angeles
 
 (1993) 17 Cal.App.4th 158 [21 Cal.Rptr.2d 245], a case decided by division seven of this appellate district.
 
 Randas
 
 involved a swimmer who was injured when she slipped and fell on the wet poolside tile at a YMCA. The plaintiff in
 
 Randas
 
 argued, as does the plaintiff in this case, that the YMCA’s release form violated the public interest. Division seven rejected this contention, stating: “Swimming, like other athletic or recreational activities, however enjoyable or beneficial, is not ‘essential’ as a hospital is to a patient
 
 (Tunkl
 
 v.
 
 Regents of University of California, supra,
 
 60 Cal.2d 92) or a repair garage is to a California motorist.
 
 (Gardner
 
 v.
 
 Downtown Porsche Audi
 
 [(1986)] 180 Cal.App.3d 713 [225 Cal.Rptr. 757].)”
 
 (Randas
 
 v.
 
 YMCA of Metropolitan Los Angeles, supra,
 
 17 Cal.App.4th at p. 162.)
 

 Similarly, we conclude the release form is not contrary to public policy under the facts of this case. “[N]o public policy opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party . . . .”
 
 (Tunkl
 
 v.
 
 Regents of University of California, supra,
 
 60 Cal.2d at p. 101.) Here, plaintiff voluntarily released the YMCA from negligence liability arising from her use of its premises, facilities, or equipment, in return for her right to participate in the Senior Program. Her voluntary signing of that release did not violate any public policy we can identify. On the contrary, her signing of the release benefited the public at large by enabling the YMCA to provide low-cost recreational activities to seniors “without the risks and sometimes overwhelming costs of litigation.”
 
 (Hohe
 
 v.
 
 San Diego Unified Sch. Dist.
 
 (1990) 224 Cal.App.3d 1559, 1564 [274 Cal.Rptr. 647].)
 

 The release exhibited none of the coercive aspects typically found in an adhesion contract. The program’s simple recreational offerings of games, socializing, shopping, and eating lunch, were not so essential as to rob plaintiff of her free will in deciding whether to sign the release. Reasonable
 
 *28
 
 minds must agree plaintiff was not precluded by signing the release from finding another senior center or club more to her liking had she wished to do so.
 

 Plaintiff’s primary argument is that we should protect the public’s interest in maintaining programs such as the YMCA’s which provide inexpensive and nutritious meals to seniors. Such public interest, however, would not be furthered by invalidating the YMCA’s release form. On the contrary, low-cost meal programs would be endangered were we to prohibit providers such as the YMCA from shifting the risk of premises liability to their participants. If we were to invalidate the release form, the YMCA’s rational response would be to terminate the Senior Program or increase the admission price to reflect its true cost.
 

 To the extent plaintiff is suggesting there are insufficient economical alternatives to the YMCA Senior Program, such scarcity, assuming it exists, would not support invalidating the release form. In
 
 Olsen
 
 v.
 
 Breeze, Inc.
 
 (1996) 48 Cal.App.4th 608 [55 Cal.Rptr.2d 818], for example, a plaintiff brought an action on behalf of himself and other skiers to challenge the industry-wide practice of requiring signed liability releases whenever work is performed on ski bindings. The appellate court, however, concluded the industry custom requiring such releases was neither unfair competition nor unconscionable. The court stated in part: “There is nothing inherently unreasonable in skiers agreeing with ski equipment distributors or service providers to allocate to skiers the risk of injury from failure of a ski binding to release properly. Skiers already assume the risks inherent in the sport. [Citation.] The releases at issue deal with risks associated with negligent acts which increase the risks inherent in skiing. Furthermore, consumers are not denied a meaningful choice by virtue of the common use of releases. Their choice to ski already exposes them to a number of risks inherent in that activity. Skiing, like other athletic or recreational pursuits, however beneficial, is not an essential activity. [Citation.]”
 
 {Id.
 
 at pp. 621-622.)
 

 Similarly, any shortage of senior centers offering low-cost lunches without requiring signed releases does not render the YMCA’s Senior Program an essential activity. Those who frequent recreational activity centers such as the YMCA expose themselves to any number of risks inherent in entering those premises, and conditioning their participation upon signing the release does not deprive them of a meaningful choice.
 
 [2]
 

 Although munching while socializing, shopping, and playing games is not a sporting activity like skiing or swimming, it is a recreational activity
 
 *29
 
 which, however pleasurable, is not essential. While eating is necessary to existence, we decline to place undue emphasis on the fact that food was provided as part of the Senior Program. There is no indication plaintiff would have been unable to eat without that program. On the contrary, her infrequent attendance at the YMCA program on only five or six occasions leads us to infer she was quite capable of obtaining nourishment elsewhere. While the food preparation and handling aspects of the YMCA’s activities are subject to legislative oversight (see, e.g., Health & Saf. Code, § 114075 et seq. [sanitation requirements for food establishments]), that does not mean the Senior Program was subject to government regulation in the sense described in
 
 Tunkl
 
 v.
 
 Regents of University of California, supra,
 
 60 Cal.2d 92. As this is not a food poisoning case, we need not decide whether the release would be upheld in a food-borne illness situation.
 

 Despite plaintiff’s best efforts to separate this case from
 
 Randas
 
 v.
 
 YMCA of Metropolitan Los Angeles, supra,
 
 17 Cal.App.4th 158, the two are indistinguishable. As our colleagues in
 
 Randas
 
 concluded with regard to swimming, we likewise conclude the Senior Program’s recreational activities, however enjoyable, worthwhile, or nutritious, are not as essential as a hospital or repair garage to a patient or motorist. We find no reason to invalidate the release on public interest grounds. Because plaintiff waived her right to sue the YMCA for her personal injuries resulting from its alleged negligence in maintaining its premises, we conclude the motion for summary judgment should have been granted.
 

 Disposition
 

 The petition for peremptory writ of mandate is granted. We order the trial court to vacate its November 26, 1996, order denying petitioner’s motion for summary judgment, in Los Angeles Superior Court case No. YC026142, entitled Clark v. YMCA of Metropolitan Los Angeles, and to enter a new and different order granting same. Each party is to bear its own costs.
 

 Spencer, P. J., and Vogel (Miriam A.), J., concurred.
 

 A petition for a rehearing was denied June 6, 1997.
 

 [1]
 

 The release form stated:
 

 “YMCA of Metropolitan Los Angeles
 

 “Release and Waiver of Liability and Indemnity Agreement
 

 “In Consideration of being permitted to enter the YMCA for any purpose, including, but not limited to observation, use of facilities or equipment or participation in any way, the undersigned . . . hereby acknowledges, agrees and represents that he or she has or immediately upon entering will, inspect such premises and facilities. It is further warranted that such entry in the YMCA for observation, participation or use of any facilities or equipment constitutes an acknowledgment that such premises and all facilities and equipment thereon have been inspected and that the undersigned finds and accepts same as being safe and reasonably suited for the purposes of such observation or use.
 

 “I[n] Further Consideration of Being Permitted to Enter the YMCA for Any Purpose Including, but Not Limited to Observation, Use of Facilities or Equipment, or Participation in Any Way, the Undersigned Hereby Agrees to the Following:
 

 “The Undersigned Hereby Releases, Waives, Discharges and Covenants Not to Sue the YMCA . . . (hereinafter referred to as ‘releasees’) from all liability to the undersigned ... for any loss or damage, and any claim or demands therefor on account of injury to the person or property or resulting in death of the undersigned, whether caused by the negligence of the releasees or otherwise, while the undersigned is in, upon, or about the premises or any facilities or equipment therein.
 

 “[]The Undersigned Hereby Agrees to Indemnify and Save and Hold Harmless the releasees and each of them from any loss, liability, damage or cost they may incur due to the presence of the undersigned in, upon or about the YMCA premises or in any way observing or using any facilities or equipment of the YMCA whether caused by the negligence of the releasees or otherwise.
 

 “[]The Undersigned Hereby Assumes Full Responsibility for and Risk of Bodily Injury, Death or Property Damage due to the negligence of releasees or otherwise while in, about or upon the premises of the YMCA and/or while using the premises or any facilities or equipment hereon.
 

 “The Undersigned further expressly agrees that the foregoing Release, Waiver and Indemnity Agreement is intended to be as broad and inclusive as is permitted by the law of the State of California and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect.
 

 “The Undersigned Has Read and Voluntarily Signs the Release and Waiver of Liability and Indemnity Agreement, and further agrees that no oral representations, statements or inducement apart from the foregoing written agreement have been made.
 

 “I Have Read This Release
 

 “Date:.
 

 ‘Signature of Applicant”
 

 [2]
 

 Plaintif£ contends the release, signed one month before the accident, did not apply on the date in question. Nothing in the release, however, limits its vaiability to the date of signing only.