Filed 3/8/16  Murphy v. Richardson CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ROBERT MURPHY,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>DAVID LEE RICHARDSON et al.,<br><br>    Defendants and Respondents. | D067245<br><br><br> (Super. Ct. No. 37-2012-00085485-CU-PA-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joel M.

Pressman, Judge.  Affirmed.

Joseph A. Sciarretta, Anthony D. Sciarretta for Plaintiff and Appellant.

Greines, Martin, Stein & Richland LLP, Robert A. Olson, Alana H. Rotter; Boles

& Di Mascio, Roger L. Popeney for Defendants and Respondents.

Robert Murphy appeals from a summary judgment entered in favor of In His Steps

Christian Recovery Home, Inc. (IHS), IHS employee David Lee Richardson, and the

estate of former IHS board member Paul Ransom (collectively, Respondents) in this

negligence action for personal injuries arising from an automobile accident caused by Richardson. Murphy contends the court erred in granting summary judgment based on its determination that his written waiver of liability precluded him from recovering for negligence, because the waiver was void as against the public interest and ambiguous as to its scope. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

IHS is a nonprofit organization providing religious-based support and residential recovery for individuals with alcohol and drug-related problems. Because of its religious orientation, the IHS group home was not subject to licensure by the Department of Alcohol and Drug Programs as an alcoholism or drug abuse recovery or treatment facility.

Murphy entered the IHS program in 2010 and, as a condition of his participation, signed a written Admission Agreement and Waiver of Liability (the Waiver), which stated in part:

> "I further understand that I give up any right to sue or claim damages for any reason whatsoever that may arise at any further time from this date in consideration of the help and assistance given m[e] by [IHS] Home or related activities. I understand that [IHS] will provide my room and board as well as other assistance to help me reduce the pain and suffering resulting from my substance abuse. I understand that I will apply for public assistance and give [IHS], in their [*sic*] capacity as General Relief Provider, the authority to sign and cash my public assistance check to help off-set the cost for my room and board."

The contract also stated, "I understand that [IHS] Special Services is not a treatment program."

2

At the outset, IHS informed Murphy that he needed a California identification card from the Department of Motor Vehicles (DMV) to apply for public assistance and, about a week later, Richardson drove Murphy to the DMV in a van registered to Ransom, who was an IHS board member.[1] While en route, Richardson ran a red light and caused an accident in which Murphy was injured. Murphy spent three days in the hospital receiving treatment for the injuries.

The trial court concluded that Murphy's Waiver constituted an express assumption of risk barring this action and granted summary judgment in favor of the Respondents. Murphy appeals from the resulting judgment.

DISCUSSION

Murphy contends that the trial court erred in granting summary judgment because the release from liability in the Waiver was void as contrary to public policy because drug and alcohol rehabilitation are matters of great public interest. He also maintains that summary judgment was improper because the scope of the Waiver was ambiguous and the automobile accident was not reasonably related to the purpose and object of the release.

"Where, as here, no conflicting parol evidence is introduced concerning the interpretation of the document, 'construction of the instrument is a question of law, and the appellate court will independently construe the writing.' " (*Paralift, Inc. v. Superior*

---

[1] Ransom died during the course of litigation and his estate was substituted in as a party in his stead.

3

*Court* (1993) 23 Cal.App.4th 748, 754-755 quoting *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1166.)

## I. Violation of Public Policy

Waivers or releases seeking to contract away liability are only valid under certain circumstances. "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." (Civ. Code, § 1668.)[2] In interpreting this statute, courts have consistently held that an exculpatory clause that violates public policy is void. (*Tunkl v. Regents of University of Cal*. (1963) 60 Cal.2d 92, 96 (*Tunkl*); *Henrioulle v. Marin Ventures, Inc.* (1978) 20 Cal.3d 512, 517 (*Henrioulle*).)

While the fluid concept of "public policy" cannot be expressed in any rigid formula, the California Supreme Court has identified six factors that describe "the type of transaction in which exculpatory provisions will be held invalid." (*Tunkl, supra,* 60 Cal.2d at p. 98.) An attempted waiver of liability is void as violative of public policy if it exhibits some, but not necessarily all, of the following six characteristics:

"[(1)] It concerns a business of a type generally thought suitable for public regulation.

---

2      All further statutory references will be to the Civil Code.

4

"[(2)] The party seeking exculpation is engaged in performing a service of great importance to the public, which is often a matter of practical necessity for some members of the public.

"[(3)] The party holds himself out as willing to perform this service for any member of the public who seeks it, or at least for any member coming within certain established standards.

"[(4)] As a result of the essential nature of the service, in the economic setting of the transaction, the party invoking exculpation possesses a decisive advantage of bargaining strength against any member of the public who seeks his services.

"[(5)] In exercising a superior bargaining power the party confronts the public with a standardized adhesion contract of exculpation, and makes no provision whereby a purchaser may pay additional reasonable fees and obtain protection against negligence.

"[(6)] Finally, as a result of the transaction, the person or property of the purchaser is placed under the control of the seller, subject to the risk of carelessness by the seller or his agents."  (*Id.* at pp. 98-101, fns. omitted.)

However, "no public policy opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party."  (*Id.* at p. 101.)

Initially, Murphy argues that the trial court did not adequately consider these factors and we must remand for a consideration of this issue.  Assuming, without deciding, that this is so, however, we apply a de novo standard of review and thus nothing would be gained by remanding the matter for the trial court's reconsideration. (See *California School of Culinary Arts v. Lujan* (2003) 112 Cal.App.4th 16, 22.) Further, because significant *Tunkl* factors are not implicated here, we agree with the trial court that the release of liability was valid and enforceable.

5

First, IHS did not conduct "business of a type generally thought suitable for public regulation." (*Tunkl, supra,* 60 Cal.2d at p. 98.) IHS was primarily a nonprofit group providing spiritual support and a home for those recovering from substance abuse problems. Its admission agreement specifically stated that it was not a treatment program, and in fact it did not employ any licensed drug or alcohol counselors or licensed therapists to work with the residents. The Department of Alcohol and Drug Programs determined that IHS was not a drug or alcohol treatment facility or program subject to state licensure, but rather a sober living facility with a religious orientation.

Second, while IHS provided a regimen of services to selected individuals, like Murphy, who sought to recover from substance abuse problems, its program did not provide "services of great importance to the public" within the *Tunkl* framework. (*Tunkl, supra,* 60 Cal.2d at pp. 98-99.) IHS was a religious program, wherein religious support was important to participating individuals, but not a "practical necessity for some members of the public" (*ibid.*) in the same vein as services offered by hospitals or other businesses found to fit within the ambit of section 1668. (Cf. *Gavin W. v. YMCA of Metropolitan Los Angeles* (2003) 106 Cal.App.4th 662 [release of liability for negligence by a child care service provider]; *Henrioulle*, *supra*, 20 Cal.3d at pp. 517-520 [release of liability for negligence by residential landlord]; *Tunkl*, at p. 102 [release of liability for negligence by a hospital].)

Third, IHS did not hold itself "as willing to perform [its] service for any member of the public . . . or at least for any member coming within certain established standards."

6

(*Tunkl*, *supra*, 60 Cal.2d at p. 99.)  This again relates back to IHS's posture as an organization focused on religious services and Christian-based support for individuals in recovery.  An individual from the general public did not qualify for services from IHS by falling within certain objective, established standards.  Rather, IHS subjectively determined whether individuals needing a sober living environment should receive its services based on whether these individuals had an appropriate motivation and an interest in its Christian-based format.

We recognize that some of the *Tunkl* factors were at least partially satisfied here.  For example, after entering the admission agreement, Murphy was, to a certain extent, under the control of, and subject to the risk of carelessness by, IHS.  IHS also likely had superior bargaining strength relative to Murphy, who was homeless and in need of support at the time he entered its program.  Nevertheless, because of the nonessential character of the religious services offered by IHS, the bargaining strength and degree of control exercised by IHS did not rise to the level of other circumstances implicating the *Tunkl* public interest exception.

Instead, the transaction between Murphy and IHS was similar to circumstances where courts have enforced waivers of negligence liability as to nonessential activities that benefited the public.  In *YMCA of Metropolitan Los Angeles v. Superior Court* (1997) 55 Cal.App.4th 22, 29, the court upheld a liability waiver signed by senior citizens participating in recreational activities provided by the YMCA, releasing the YMCA from negligence liability arising out of the use of its premises.  (*Id.* at pp. 25-27.)  The court

7

reasoned that the agreement was purely private, recreational activities were not essential services, and the availability of low-cost recreational activities to seniors benefited the public at large. (*Id.* at pp. 27-29.) The court reasoned that releases of this type "enabl[ed] the YMCA to provide [these] activities 'without the risks and sometimes overwhelming costs of litigation.' " (*Id.* at p. 27, citation omitted.) The relationship between IHS and Murphy here was similar to that of the YMCA and the senior citizens. IHS's liability waiver facilitated its religious outreach activities, much like a waiver that facilitated the YMCA's provision of recreational activities for senior citizens, and did not transform the parties' purely private agreement into a matter of general public interest.

Under the agreement at issue here, Murphy voluntarily released IHS from negligence liability in return for religious guidance and room and board. "[N]o public policy opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party . . . ." (*Tunkl, supra,* 60 Cal.2d at p. 101.) Further, enforcing the liability waiver in this context benefits the public. Without the ability to limit liability, religious recovery homes like IHS might not be able to financially support their outreach efforts. IHS had a net operating loss in housing these residents, but continued to house people because of its Christian ministry and message. The Waiver in this case allowed IHS to provide religious guidance and housing to individuals recovering from substance abuse issues, who often had limited avenues for support. The public benefits from this type of waiver, which allow religious recovery homes and similar charitable organizations "to continue

8

without the risks and sometimes overwhelming costs of litigation." (*Hohe v. San Diego Unified Sch. Dist.* (1990) 224 Cal.App.3d 1559, 1564.)

Based on our application of the *Tunkl* criteria to individuals seeking religious guidance and sober living support, we find the Waiver of liability in this case was not void as against the public interest.

## II. Was the Scope of the Waiver Ambiguous?

Murphy also contends summary judgment was improper because the scope of the waiver was ambiguous and Respondents' negligent actions did not reasonably relate to the purpose and object of the release. Specifically, he argues the phrase "related activities" was ambiguous as to whether it included off-site transportation services.

To be enforceable, a release "must be clear, unambiguous, and explicit in expressing the intent of the subscribing parties." (*Bennett v. United States Cycling Federation* (1987) 193 Cal.App.3d 1485, 1490.) The agreement must clearly notify the prospective releasor or indemnitor of the effect of signing the agreement. (*Ferrell v. Southern Nevada Off-Road Enthusiasts, Ltd.* (1983) 147 Cal.App.3d 309, 318.) "An ambiguity exists when a party can identify an alternative, semantically reasonable, candidate of meaning of a writing. [Citations.] An ambiguity can be patent, arising from the face of the writing, or latent, based on extrinsic evidence." (*Solis v. Kirkwood Resort Co.* (2001) 94 Cal.App.4th 354, 360.) Ambiguity about the scope of the release is normally construed against the drafter. (*Ibid.*)

9

We determine the scope of a release from its express language. (*Cohen v. Five Brooks Stable* (2008) 159 Cal.App.4th 1476, 1485.) When an exculpatory clause expressly releases a defendant from all liability, a plaintiff need not have "a specific knowledge of the particular risk that ultimately caused the injury." (*Benedek v. PLC Santa Monica, LLC* (2002) 104 Cal.App.4th 1351, 1357 (*Benedek*).) However, the waiver is only valid as to acts of negligence that are reasonably related to the object or purpose for which the release is given. (*Paralift v. Superior Court* (1993) 23 Cal.App.4th 748, 757.) If the act of negligence is within the scope of the language of the release, the release is valid. (*Benedek*, at pp. 1357-1358.) Murphy contends the Waiver was ambiguous as to location and scope, because the phrase "related activities" could have referred to any activity of IHS anywhere or it could have been read as limited to those events and related activities conducted at the IHS residential facility. Because of this alleged ambiguity, Murphy concludes that the Waiver did not apply to off-site acts of negligence. We disagree. The Waiver was not ambiguous, but clear and explicit. It unequivocally released Respondents from liability for negligence under the circumstances underlying Murphy's negligence claim and clearly expressed the intent of the parties.

Based on an independent analysis of the express terms of the agreement, the term "related activities" was not reasonably susceptible to multiple interpretations. Although the Waiver was broad in scope, this alone did not render it unenforceable. (See *Paralift v. Superior Court*, *supra*, 23 Cal.App.4th at pp. 756-758 [upholding a waiver of liability

10

that released the defendant from injuries arising out of "parachuting activities," unlimited to a certain time period or location].) The waiver did not contain an implied or express limit to activities strictly at the IHS property and nothing in the language of the waiver would have caused a reasonable person to make such an assumption. Rather the agreement expressed a broad waiver that included all aspects of the IHS program by recognizing that IHS was not just providing room and board, but also "*other assistance*" and included the condition that Murphy apply for public assistance to help defray his room and board costs while living at the facility. (Italics added.) This language made clear that "related activities" were not limited to just those occurring at the IHS site, but incorporated off-site activities as well.

We also reject Murphy's assertion that Richardson's negligence in the automobile accident was not reasonably related to the purpose or object of the agreement. The purpose or object of the Waiver was to facilitate Murphy's access to the IHS sober living and religious support program. As discussed, the scope of the Waiver included the circumstances of the car accident, which occurred while Richardson was driving Murphy, in a van registered to Ransom, to the DMV so that Murphy could obtain a California identification card to apply for public assistance, an explicit condition of his admission to IHS. In sum, the alleged act of negligence was reasonably related to the purpose and object for which the admission agreement was signed: Murphy's participation in the IHS religious program and sober living home. The agreement contained an unambiguous

11

waiver that exculpated IHS from liability arising out of activities thereunder and the trial court correctly concluded that the Waiver was valid.

## DISPOSITION

The judgment is affirmed. Respondents to recover their costs on appeal.


Prager, J.[*]

WE CONCUR:

HALLER, Acting P. J.

O'ROURKE, J.

---

[*] Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12