[No. B157016. Second Dist., Div. Five. Dec. 31, 2002.]

TOM BENEDEK, Plaintiff and Appellant, v.
PLC SANTA MONICA, LLC, Defendant and Respondent.

**COUNSEL**

Law Offices of Gregory F. Stannard and Gregory F. Stannard for Plaintiff and Appellant.

Law Offices of Koester & Beavers, Glenn Rosen and Suzanne Klump for Defendant and Respondent.

## OPINION

**GRIGNON, Acting P. J.**—An individual signed a waiver of liability as part of a membership agreement at a health club. The waiver of liability released the health club from liability for all personal injuries sustained by a member on the premises "whether using exercise equipment or not." The health club member suffered personal injuries due to the negligence of the health club, while on the club's premises, but not using the exercise equipment. We conclude the express language of the unambiguous release of the health club from all premises liability defines its scope. In this case, the broad language of the release applies to liability of the health club for the fitness-unrelated personal injuries suffered by the health club member. We affirm the summary judgment in favor of the health club.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff and appellant Tom Benedek was a member of a health club located in the Loews Santa Monica Hotel. Defendant and respondent PLC Santa Monica, LLC (Pritikin) had purchased the health club in 1997 and renamed it the Pritikin Longevity Center and Spa. Pritikin required each existing member of the health club to sign a new membership agreement with Pritikin in order to continue health club membership. In September 1998, Benedek signed the two-page membership agreement. The entire agreement is reproduced as an appendix to this opinion.

The membership agreement is comprised of 11 itemized paragraphs. In the introductory paragraph, Pritikin offered Benedek "the use of its services and facilities in conformance with the terms and conditions set forth below." Paragraph 5 explained that Benedek's membership gave him "access to facilities and services during the designated hours of operation." Paragraph 7 is entitled "Waiver of Liability." In an initial paragraph, Benedek "acknowledges and understands that [he] is using the facilities and services of the HOTEL and SPA at [his] own risk." Paragraph 7 continued as follows: "The SPA and HOTEL and their owners, officers, employees, agents, contractors and affiliates shall not be liable—and the MEMBER hereby expressly waives any claim of liability—for personal/bodily injury or damages—which occur to any MEMBER, or any guest of any MEMBER, or for any loss of or injury to person or property. This waiver includes, but is not limited to any loss, damage or destruction of the personal property of the MEMBER or the MEMBERS' guest(s) <u>and is intended to be a complete release of any responsibility for personal injuries and/or property loss/ damage sustained by any MEMBER or any guest of any MEMBER while on the HOTEL and/or SPA premises, whether using exercise equipment or not.</u>" (Original underscoring.)

On March 28, 2000, Benedek was injured at the health club prior to beginning his regular workout. Benedek intended to use an elliptical training machine that ordinarily faced a television set suspended on a rack above head level. When Benedek approached the elliptical training machine, he noticed the television set was facing away from the elliptical training machine. In an attempt to return the television set to its normal position, Benedek touched the rack on which the television lay. In response to this movement, the television began to slide off the rack over Benedek's head. Benedek attempted to hold the television in place; however, he was unable to bear the weight of the television and injured his knee.

Benedek brought this action against Pritikin, alleging a single cause of action for "negligence [and] premises liability." Pritikin answered the complaint, raising the affirmative defenses of assumption of risk and waiver or release. Pritikin then moved for summary judgment, on the basis that the written release in Benedek's membership agreement expressly negated any duty Pritikin owed Benedek. Benedek submitted no evidence in opposition to the motion, with the exception of excerpts from his deposition setting forth the circumstances of his injury. After a hearing, the trial court granted the summary judgment motion, concluding the written release clearly and unambiguously defeated Benedek's lawsuit. Judgment was entered, and Benedek filed a timely notice of appeal.

## DISCUSSION

### Standard of Review

█ " 'A defendant is entitled to summary judgment if the record establishes as a matter of law that none of the plaintiff's asserted causes of action can prevail.' (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46].) The pleadings define the issues to be considered on a motion for summary judgment. (*Sadlier* v. *Superior Court* (1986) 184 Cal.App.3d 1050, 1055 [229 Cal.Rptr. 374].) As to each claim as framed by the complaint, the defendant must present facts to negate an essential element or to establish a defense. Only then will the burden shift to the plaintiff to demonstrate the existence of a triable, material issue of fact. (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].)" (*Ferrari* v. *Grand Canyon Dories* (1995) 32 Cal.App.4th 248, 252 [38 Cal.Rptr.2d 65].) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar* v. *Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24

P.3d 493].) ■ We review orders granting or denying a summary judgment motion de novo. (*FSR Brokerage, Inc. v. Superior Court* (1995) 35 Cal.App.4th 69, 72 [41 Cal.Rptr.2d 404]; *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 579 [37 Cal.Rptr.2d 653].) We exercise "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law." (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 [38 Cal.Rptr.2d 35].)

*Negligence*

■ An action in negligence requires a showing that the defendant owed the plaintiff a legal duty, the defendant breached the duty, and the breach was a proximate cause of the injuries suffered by the plaintiff. (*Allabach v. Santa Clara County Fair Assn.* (1996) 46 Cal.App.4th 1007, 1011 [54 Cal.Rptr.2d 330].) ■ A release may negate the duty element of a negligence action. Contract principles apply when interpreting a release, and "normally the meaning of contract language, including a release, is a legal question." (*Solis v. Kirkwood Resort Co.* (2001) 94 Cal.App.4th 354, 360 [114 Cal.Rptr.2d 265].) "Where, as here, no conflicting parol evidence is introduced concerning the interpretation of the document, 'construction of the instrument is a question of law, and the appellate court will independently construe the writing.'" (*Paralift, Inc. v. Superior Court* (1993) 23 Cal.App.4th 748, 754 [29 Cal.Rptr.2d 177].) "It therefore follows that we must independently determine whether the release in this case negated the duty element of plaintiff['s] cause[] of action." (*Allabach v. Santa Clara County Fair Assn., supra,* 46 Cal.App.4th at p. 1011.)

*Releases*

■ A written release may exculpate a tortfeasor from future negligence or misconduct. (*Bennett v. United States Cycling Federation* (1987) 193 Cal.App.3d 1485, 1490 [239 Cal.Rptr. 55].) To be effective, such a release "must be clear, unambiguous, and explicit in expressing the intent of the subscribing parties." (*Ibid.*) The release need not achieve perfection. (*Paralift, Inc. v. Superior Court, supra,* 23 Cal.App.4th at p. 755.)[1] ■ Exculpatory agreements in the recreational sports context do not implicate the

---

[1] We note that the waiver of liability signed by Benedek does not expressly include the term "negligence." Benedek does not contend that the release is ineffective on this basis. We do not address this issue. However, Division Four of the Second Appellate District has concluded: "The inclusion of the term 'negligence' is simply not required to validate an exculpatory clause." (*Sanchez v. Bally's Total Fitness Corp.* (1998) 68 Cal.App.4th 62, 67 [79 Cal.Rptr.2d 902].) Whether the exculpatory clause bars recovery against a negligent party is

public interest and therefore are not void as against public policy. (*Lund v. Bally's Aerobic Plus, Inc.* (2000) 78 Cal.App.4th 733, 739 [93 Cal.Rptr.2d 169]; *Allan v. Snow Summit, Inc.* (1996) 51 Cal.App.4th 1358, 1373 [59 Cal.Rptr.2d 813].)

■ The determination of whether a release contains ambiguities is a matter of contractual construction. (*Paralift, Inc. v. Superior Court, supra,* 23 Cal.App.4th at pp. 754-755.) "An ambiguity exists when a party can identify an alternative, semantically reasonable, candidate of meaning of a writing. [Citations.] An ambiguity can be patent, arising from the face of the writing, or latent, based on extrinsic evidence." (*Solis v. Kirkwood Resort Co., supra,* 94 Cal.App.4th at p. 360.) The circumstances under which a release is executed can give rise to an ambiguity that is not apparent on the face of the release. (See *Bennett v. United States Cycling Federation, supra,* 193 Cal.App.3d at pp. 1490-1491.) If an ambiguity as to the scope of the release exists, it should normally be construed against the drafter. (Civ. Code, § 1654; *Solis v. Kirkwood Resort Co., supra,* 94 Cal.App.4th at p. 360.)

■ In the absence of extrinsic evidence, the scope of a release is determined by the express language of the release. (*Sanchez v. Bally's Total Fitness Corp.* (1998) 68 Cal.App.4th 62, 69 [79 Cal.Rptr.2d 902].) The express terms of the release must be applicable to the particular negligence of the defendant, but every possible specific act of negligence of the defendant need not be spelled out in the agreement. (*Id.* at pp. 68-69.) When a release expressly releases the defendant from any liability, it is not necessary that the plaintiff have had a specific knowledge of the particular risk that ultimately caused the injury. (*Paralift, Inc. v. Superior Court, supra,* 23 Cal.App.4th at p. 757.) If a release of all liability is given, the release applies to any negligence of the defendant. " 'It is only necessary that the act of negligence, which results in injury to the releasor, be reasonably related to the object or purpose for which the release is given.' " (*Ibid.*) The issue is not whether the particular risk of injury is inherent in the recreational activity to which the release applies, but rather the scope of the release. (*Madison v. Superior Court* (1988) 203 Cal.App.3d 589, 602, fn. 11 [250 Cal.Rptr. 299]; *Allan v. Snow Summit, Inc., supra,* 51 Cal.App.4th at pp. 1372-1375.)

An act of negligence is reasonably related to the object or purpose for which the release was given if it is included within the express scope of the

---

controlled by the intent of the parties as expressed in the written agreement. (*Id.* at pp. 66-67.) A waiver of liability in a health or fitness club membership agreement necessarily releases the health club from liability for its negligence, since there is no other liability to release. (*Id.* at p. 69.)

release. (*Paralift, Inc. v. Superior Court, supra,* 23 Cal.App.4th at pp. 756-757.) Thus, a release given in connection with parachuting activities releasing the releasee "forever," unlimited by time and place, and containing no exceptions, was applicable to injuries incurred while parachuting three years after the release was signed and in a different location than where the activities covered by the release originally began. (*Ibid.*) In addition, a release given in connection with scuba diving activities was applicable to the death of a scuba diving student who was inadequately supervised and who drowned. (*Madison v. Superior Court, supra,* 203 Cal.App.3d at p. 601.) Similarly, releases given in connection with fitness activities were applicable to injuries incurred while engaging in fitness activities. (*Sanchez v. Bally's Total Fitness Corp., supra,* 68 Cal.App.4th at p. 68 [slip and fall on slide exercise mat during exercise class between exercises]; *Lund v. Bally's Aerobic Plus, Inc., supra,* 78 Cal.App.4th at p. 738 [injury to cervical spine while using weight lifting equipment under supervision of personal trainer]; cf. *Leon v. Family Fitness Center (#107), Inc.* (1998) 61 Cal.App.4th 1227, 1234-1235 [71 Cal.Rptr.2d 923] [release of liability solely for fitness-related injuries was not applicable to ordinary premises liability].)

*The Pritikin Release Is Applicable to Benedek's Injury*

■ The release Benedek signed was clear, unambiguous, and explicit. It released Pritikin from liability for any personal injuries suffered while on Pritikin's premises, "whether using exercise equipment or not." The purpose for which the release was given was to allow Benedek "access" to Pritikin's "facilities and services." Benedek was injured while inside Pritikin's facilities.

Benedek contends the release should be interpreted to apply only to injuries suffered while actively using Pritikin's exercise equipment. This, however, is not a "semantically reasonable" interpretation of the release; indeed, it is contrary to the express language of the release. Given its unambiguous broad language, the release reached all personal injuries suffered by Benedek on Pritikin's premises, including the injury Benedek suffered because of the falling television.[2]

Benedek further contends the release cannot bar his action because, as a matter of law, a health club release is not effective to release claims for

---

[2]A sound argument could be made that positioning the improperly fastened television in preparation for monotonous aerobic training was reasonably related to fitness activities. Because we conclude the broad language of the release reaches fitness-unrelated activities, we do not address this issue.

injuries arising out of circumstances unrelated to fitness. He argues that the negligence released must be "reasonably related to the purpose of the release," i.e., fitness. In other words, Benedek asserts that health clubs and their members are prohibited from reallocating by contract the risks of premises liability. This assertion is incorrect. "The general principle remains unaltered that 'there is no public policy which " 'opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party . . . .' " [Citations.]' " (*Allan v. Snow Summit, Inc., supra,* 51 Cal.App.4th at p. 1373.) A release of all premises liability in consideration for permission to enter recreational and social facilities for any purpose does not violate public policy. (*YMCA of Metropolitan Los Angeles v. Superior Court* (1997) 55 Cal.App.4th 22, 27 [63 Cal.Rptr.2d 612].)

Benedek's fitness-related argument is based on a misreading of three cases concerning health club releases: *Leon v. Family Fitness Center (#107), Inc., supra,* 61 Cal.App.4th 1227; *Sanchez v. Bally's Total Fitness Corp., supra,* 68 Cal.App.4th 62; and *Lund v. Bally's Aerobic Plus, Inc., supra,* 78 Cal.App.4th 733. We address each of these cases in turn.

In *Leon v. Family Fitness Center (#107), Inc., supra,* 61 Cal.App.4th 1227, the plaintiff was injured when a sauna bench in a health club on which he lay collapsed beneath him. Prior to the accident, he had signed an agreement containing an exculpatory clause. The exculpatory clause was inconspicuously buried in small print on the agreement. The clause stated: "[Leon] specifically agrees that [Family Fitness] shall not be liable for any claim, demand, cause of action of any kind whatsoever for, or on account of death, personal injury, property damage or loss of any kind resulting from or related to [Leon's] use of the facilities or participation in any sport, exercise or activity within or without the club premises." (*Id.* at p. 1231.) The *Leon* court concluded the exculpatory clause was not sufficiently conspicuous to be enforceable. (*Id.* at pp. 1232-1233.) The *Leon* court also concluded that the language of the exculpatory clause was fatally ambiguous. Noting that the exculpatory clause was sandwiched between two clauses concerned only with the risks inherent in an exercise or sports program without any mention that it was intended to insulate Family Fitness from liability for premises negligence, the *Leon* court limited the scope of the release to its unambiguous provisions. It held that the release was ineffective to release claims unrelated to sports or exercise activities. (*Id.* at p. 1235.)

In analyzing whether the collapsing sauna bench was within the scope of this release, the *Leon* court stated: "Here, Family Fitness's negligence was

not reasonably related to the object or purpose for which the release was given, that is, as stated, injuries resulting from participating in sports or exercise rather than from merely reclining on the facility's furniture. [Citation.] [¶] The objective purpose of the release Leon signed was to allow him to engage in fitness activities within the Family Fitness facilities. However, it was not this type of activity which led to his injury." (*Id.* at p. 1235.) The *Leon* court determined the purpose of the release from its language. However, the language of the release was ambiguous and, therefore, narrowly construed against its drafter. The *Leon* court never suggested that a properly drafted release could not release a health club from liability for injuries unrelated to fitness activities. Indeed, the *Leon* court strongly suggested otherwise: "Reading the entire document leads to the inescapable conclusion the release does not clearly, explicitly and comprehensibly set forth to an ordinary person untrained in the law, such as Leon, that the intent and effect of the document is to release claims for his own personal injuries resulting from the enterprise's own negligent acts, regardless whether related to the sports or exercise activities it marketed." (*Ibid.*) The clear implication of *Leon* is that a release clearly, explicitly, and comprehensibly setting forth such an intent and effect would be enforceable against the negligence that caused the sauna bench to collapse and injure Leon.

In *Sanchez v. Bally's Total Fitness Corp., supra,* 68 Cal.App.4th 62, a health club patron was injured while using fitness equipment. She had previously signed a release for fitness-related injuries she suffered at the health club. Sanchez contended the release was ineffective in that it did not expressly refer to the negligence of Bally's Total Fitness. The *Sanchez* court held that the release was applicable by its terms and context to the negligence of Bally's Total Fitness. In the course of its discussion, the *Sanchez* court referred to *Leon*. The *Sanchez* court noted that the release in *Leon* had been fitness related and the sauna bench collapse causing injury to Leon had "occurred as a result of an incident not reasonably contemplated by the parties." (*Id.* at p. 67.) In discussing whether the negligence of Bally's Total Fitness causing injury to Sanchez was within the scope of the fitness-related release that Sanchez had signed, the *Sanchez* court stated: "It is obvious that patrons of health clubs sign release and assumption of risk provisions in contemplation of injuries that occur in the course of using the facilities for the primary purpose of exercising and using exercise equipment. Therefore, the injury suffered by plaintiff in the present matter is one reasonably within the contemplation of the parties." (*Id.* at p. 68.) The *Sanchez* court determined the scope of the release in its case by examining the language of the release. Nothing in the *Sanchez* opinion suggests that a broader release signed by a health club member would be ineffective to release fitness-unrelated injuries.

In *Lund v. Bally's Aerobic Plus, Inc., supra,* 78 Cal.App.4th 733, a health club member was injured while using weight lifting equipment under the negligent supervision of a personal trainer. She had previously signed a waiver of liability and release included in the membership agreement, releasing Bally's Aerobic Plus and its employees from liability for their own negligence. The personal trainer was an employee of Bally's Aerobic Plus. The release expressly referred to the " 'use of any exercise equipment or facilities' " and " 'our negligent instruction or supervision.' " (*Id.* at p. 738.) Lund contended that the contract to obtain the services of the personal trainer was separate from the membership agreement and personal trainer services had not been specifically mentioned in the release. Thus, she argued injuries suffered while being personally trained were outside the scope of the release. The *Lund* court rejected this argument. The *Lund* court examined the language of the release and determined that the incident in which Lund was injured was within the scope of the release and reasonably related to the object or purpose for which the release was given. However, in a footnote unrelated to the issues before it, the *Lund* court digressed to suggest that a broad release in a health club membership agreement might not be effective to exculpate the health club from all negligence. (*Id.* at p. 739, fn. 1.) This dictum is unpersuasive and appears to be based on a conflation of the principles of assumption of the risk and release, as well as a misreading of the holding in *Leon*.

We conclude that the three cases upon which Benedek relies for his "fitness-related injuries only" contention do not support his contention. In each case, the appellate court reviewed the language of the release, construed it within the agreement in which it was included, and determined whether the plaintiff's injuries were within the scope of the release, that is, reasonably related to the purpose for which the release was signed. In determining the purpose for which the release was signed, an appellate court looks at the language of the release and the agreement in which it is included, and not the inherent risks of the underlying recreational or sports activity. The relevant inquiry in a health club membership release context is not whether the injury was reasonably related to the purpose of using fitness equipment, but whether it was reasonably related to the release signed.

The release signed by Benedek unambiguously, clearly, and explicitly released Pritikin from liability for any injury Benedek suffered on hotel or spa premises, whether using exercise equipment or not. The purpose of the release included access to and entry on Pritikin's facilities; the injury suffered by Benedek was, therefore, reasonably related to the purpose of the release.

## DISPOSITION

The judgment is affirmed. Pritikin is to recover its costs on appeal.

Armstrong, J., and Mosk, J., concurred.

APPENDIX

B157016
Benedek v. PLC Santa Monica

PAGE 1 of 2

0028

Membership Agreeme

PLC Santa Monica, L.L.C. doing business as The Pritikin Longevity Center and Spa and hereinafter referred to as "SPA", offer the undersigned, hereinafter referred to as "MEMBER", the use of its services and facilities in conformance with the terms and conditions set forth below and the MEMBER accepts said offer upon the terms set forth below including the Procedures, Rules and Regulations hereinafter referred to as "RULES", which are attached hereto and made a part hereof, and any additions or changes to RULES as may from time to time be posted in the SPA. The Loews Santa Monica Beach Hotel shall hereinafter be referred to as "HOTEL."

Member Name: _Tom Benedic_____ Member Type: General __ Program Graduate __ Special __

1. **Fees**
Initiation Fees: In consideration of membership, MEMBER shall pay a non-refundable, non-transferable, one time Initiation Fee of $ _____.
(The Initiation Fee is not a prepaid sum for services, it merely entitles you to purchase services through the monthly payment and processing of Use Fees)

Use Fees: MEMBER shall pay a monthly Use Fee of $ _75_ as consideration for access to and use of the SPA facilitie and services as described in paragraph 5 of this Agreement.

Parking Fees: MEMBER has elected _X_ or declined ____ to purchase a monthly parking pass to access the self-parking facilities of the HOTEL for $ _25_ per month. This monthly parking pass may only be used during MEMBER'S use of the SPA facilities and may be immediately revoked if used for any other purpose. MEMBER hereby acknowledges that use of t parking facilities at the HOTEL is done so at the MEMBER'S own risk and by signing this Agreement, MEMBER hereby releases SPA and the HOTEL and their officers, employees, agents, contractors and affiliates from any and all liability and claims arising from MEMBER'S use of said parking facilities, whether for personal injury, property damage and/or loss.

The SPA reserves the right to change any of the above Fees by providing MEMBER 30 days notice of its intent to d so. Notice may occur in writing or by general posting in the SPA facilities.

2. **Payment of Fees:** All Fees must be paid through Checkfree electronic funds transfer (EFT) in accordance with the EFT Authorization attached hereto (except the Initiation Fee and the Use and Parking Fees for the month in which you join). Except for the month in which you join, all Fees are due and payable on the 1st day of the month for which they apply and shall be processed through EFT on that date. Initiation, Use and Parking Fees for the month in which you join shall be due and payable on the effective date of this Agreement. Use and Parking Fees for the month in which you join shall be determined by dividing the number of days remaining in the current month by the total number of days in the current month and multiplying that amount by the respective monthly Use and Parking Fees indicated above. Payment of the Initiation and other Fees for the month in which you join shall be made in cash, by check or by credit card (Amex, Visa and MasterCard only).

3. **Term :** This Agreement shall be for a term of 1 month and shall be automatically renewed at the end of each month unless terminated by either party in accordance with the terms outlined in paragraph 4 of this Agreement.

4. **Termination:** MEMBER or SPA may terminate this Agreement without cause by following the applicable procedure indicat below:

   a) MEMBER may terminate this Agreement by providing the SPA 30 days written notice indicating MEMBER'S desire to terminate. The notice period shall commence on the date of receipt of such written notice in the Membership Offices of the SPA. Notice may be sent to the Pritikin Longevity Center & Spa at 2811 Wilshire Blvd., Suite 410, Santa Monica, C 90403. MEMBER must pay any outstanding Fees up to the date of requested termination in order for the termination to become effective.
   b) SPA may terminate this Agreement at any time by providing oral or written notice. In the event that SPA terminates this Agreement prior to the end of a month for which Fees have been paid, SPA agrees to refund the pro-rated portion of unused Use and Parking Fees to MEMBER. Termination of this Agreement does not constitute any forgiveness for any outstanding Fees due from the MEMBER at the time of termination.

5. **Facilities and Services:** Use Fees shall entitle MEMBER access to facilities and services during the designated hours of operation in accordance with the attached RULES. The pool area of the HOTEL is available for Water Classes as schedule lap swimming and whirlpool use during the designated hours of operation of the SPA only. The pool area is not available t MEMBERS for sunbathing or lounging at any time.

**DEFENDANT'S EXHIBIT F**

000041

B157016

**Representation of Health Condition:** MEMBER hereby represents that the MEMBER is physically fit, physically sound and has the necessary current medical approval to utilize the SPA exercise facilities and equipment and participate in any of the exercise classes or programs available in the SPA. The SPA is relying on this representation and MEMBER understands the the SPA does not and will not investigate or certify the health of MEMBERS or their fitness to use the facilities.

**Waiver of Liability:** MEMBER acknowledges and understands that prior to beginning any exercise and/or nutrition program has been strongly recommended that he/she consult with and receive approval of a physician. MEMBER understands that any exercise program involves risk. MEMBER acknowledges and understands that he/she is using the facilities and service of the HOTEL and SPA at his/her own risk.

The SPA and HOTEL and their owners, officers, employees, agents, contractors and affiliates shall not be liable – and if MEMBER hereby expressly waives any claim of liability – for personal/bodily injury or damages – which occur to any MEMBER, or any guest of any MEMBER, or for any loss of or injury to person or property. This waiver includes, but is n limited to any loss, damage or destruction of the personal property of the MEMBER or the MEMBERS' guest(s) <u>and is intended to be a complete release of any responsibility for personal injuries and/or property loss/damage sustained by any MEMBER or any guest of any MEMBER while on the HOTEL and/or SPA premises, whether using exercise equipment or not.</u>

MEMBER agrees to indemnify and hold the SPA , HOTEL and their officers, employees, agents, contractors and affiliate harmless from any and all liability and damages incurred arising out of the conduct or activity of such MEMBER, any oth claimant MEMBERS or guests using the facilities while MEMBER is on the premises insofar as MEMBER is claimed liab for damages to others.

1. **Transferability and Assignment:** This Agreement may not be assigned or transferred to any other person or party. Membership does not confer upon any MEMBER any ownership or leasehold interest in the SPA or the HOTEL.

9. **Enforcement:** If any legal action is necessary to enforce the terms of this Agreement, the prevailing party shall be entitled reasonable attorney's fees in addition to any other relief to which he or she may entitled.

10. **Severability:** If any part, portion or provision of this Agreement shall be held invalid, void or inoperative, that part, portion or provision shall be deemed excluded from this contract and the remainder of the contract shall remain in full force and effect

11. **Entire Agreement:** MEMBER and SPA acknowledge that this Agreement, including any RULE, either included with this document or posted, constitutes the entire understanding of the parties and that the SPA has made no implied warranties or representations other than those set forth herein, to induce MEMBER to enter into this contract. No modification of this document is valid unless in writing and signed by both parties. Any discussion, agreements or understandings not stated in this document are not part if the Agreement herein

You, the buyer, may cancel this Agreement at any time prior to midnight of the third business day of the health studio(SPA) after the date of the Agreement, excluding Sundays and holidays. To cancel this Agreement, mail or delive a signed and dated notice, or send a telegram which states that you, the buyer, are canceling this Agreement, or words of similar effect. Such notice shall be sent to, The Pritikin Longevity Center and Spa, 2311 Wilshire Blvd., Suite 410, Santa Monica, CA 90403.

I have read and understand the RULES and the terms and conditions for membership as stated in this Agreement and hereby agree to comply with all of the above. I have carefully read this Agreement and fully understand its contents I am aware that this Agreement contains a release of liability and a contract between the SPA and myself and sign it of my own free wil My signature on this contract as well as my use of the facilities and services of the HOTEL and SPA further acknowledges my acceptance of the statements in this section.

MEMBER _____  Print Name: _T i M   B E N F D E H._
          Signature

SPA: _____  Effective Date: _:4/1/98_
     Authorized Signature

Notice to Consumer: In the event of a health club closure, you may have additional protections afforded you by local law beyond those provided to you under state law. For more information contact the Santa Monica City Attorney's office, Consumer Affairs, 1685 Main Street, Santa Monica, CA 90401.

000042