Filed 5/14/13  Vinson v. Paramount Pictures Corp. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ROBERT VINSON,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>PARAMOUNT PICTURES<br>CORPORATION et al.,<br><br>      Defendants and Appellants. | B237965<br><br>(Los Angeles County<br>Super. Ct. No. BC446030) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michelle R. Rosenblatt, Judge.  Reversed and remanded.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller; Matthew B. Stucky; Pollard Mavredakis Cranert Crawford & Stevens and Terrence L. Cranert for Defendants and Appellants.

Law Offices of I. Allan Oberman, I. Allan Oberman; and Debra Fischl for Plaintiff and Respondent.

_____

Appellants Paramount Pictures Corporation, Viacom, Inc. and Elite Special Events, Inc. (collectively appellants) appeal from a money judgment in favor of respondent Robert Vinson. The jury awarded Vinson past economic damages sustained after a fall from an inflatable rock-climbing wall at an event hosted and sponsored by appellants, finding appellants' negligence caused the harm to Vinson. They contend: (1) the trial court erred in denying appellants' motion for nonsuit because a release and waiver signed by Vinson precluded a finding of liability; (2) the trial court erred in finding the primary assumption of the risk doctrine did not apply, and its failure to instruct the jury on the relevant duty owed by appellants was prejudicial; and (3) the trial court abused its discretion by granting a partial new trial on the limited issue of damages.

We conclude the release signed by Vinson was valid as to the rock-climbing activity underlying his claims. Vinson expressly consented to waive any claims based on injuries incurred while participating in any activities sponsored by appellants, precluding liability. We reverse the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

Vinson was a member of the Paramount "Studio Club" (the Club). To be a member of the Club, he was required to complete an application and pay a fee. The application contained a section entitled "Assumption of Risk and Release" (the Release). The Release provided, in relevant part: "By enrolling as a member in [the Club], member hereby acknowledges that from time to time the Club sponsors certain events and activities that might present a risk of harm to the participants. In consideration of the Club's arranging such events and activities . . . , member hereby assumes all risks associated with or resulting from such participation and member . . . releases . . . [appellants] of and from any and all claims . . . , which member may have or which may hereafter accrue on account of . . . any and all known and unknown, foreseen and unforeseen bodily and personal injuries . . . resulting or to result from any accident . . . which may occur as a result . . . of the member's participation in

2

any of the events or activities sponsored by the Club." In January 2009, Vinson signed the application and initialed the Release provision.

In December 2009, the Club held a holiday party at Paramount Studios. The party included carnival games, food booths and performances. One attraction was an inflatable rock-climbing wall. The wall was approximately 30 feet tall with inflated protrusions which serve as hand and foot holds for potential climbers. When climbing on this type of wall, a climber is strapped into a harness connected to a rope. The rope then passes through a pulley at the top of the wall and loops back down to an operator of the wall. That operator uses a device called a grigri to control the amount of rope let out. The parties presented conflicting accounts of what occurred during Vinson's participation in this activity.

Vinson claimed he was given no instruction on how to secure the harness or how to climb the wall. He testified that once he reached the top of the wall, he asked the two operators attending the wall what to do next. Vinson said the operators told him to remove his hands from the wall, grab the rope, and lean back. Shortly thereafter, all of the tension in the rope gave way and Vinson went into a free fall. He stated that he hit an inflatable apron at the base of the wall, bounced at least three feet into the air, then came crashing down on the concrete pavement surrounding the wall.

Appellants presented testimony that the operator holding the rope for Vinson gave him instructions on how to put on the harness and how to climb the wall. Once Vinson reached the top, he began to jump up and down off the wall and push back and forth, in response to encouragement from his friends below. Testimony indicated that the operator holding the rope told Vinson to stop and eventually began lowering him down the wall. At some point between 50 and 75 percent down the wall, enough slack was released on the rope to allow Vinson to reach the bottom. Vinson jumped and landed on the inflatable apron and, according to both of the operators, never hit the concrete.

Based on testimony from the operators themselves and an expert in rock-wall climbing, the operators should have had full control of the rope at all times, regardless of what the climber was doing. The amount of rope released from such a mechanism is

solely controlled by the operators and thus the pace of a climber's descent is determined by the operator releasing rope through the pulley system. The operators testified that neither of them had seen the manual that accompanied the inflatable wall and provided detailed instructions on how to operate it. The operator who controlled Vinson's climb received only one hour of training. An expert testified that one half to a full day of training is typical, followed by constant supervision during the first day of operating a wall. The expert testified that, based on the evidence, the operator in this case failed to understand the mechanics of the pulley system and was negligent in his operation during Vinson's climb. Vinson produced evidence that he suffered physical and psychological injuries as a result of the fall, leading to lost wages and lost earnings.

Vinson brought suit against appellants for past and future economic damages and past and future noneconomic damages. At the close of Vinson's evidence, appellants moved for nonsuit on two grounds. First, they argued the Release, signed by Vinson, constituted a waiver of any claims arising out of participation in any events at the Club, precluding liability. The trial court found the Release was "not clear, unambiguous, and explicit in expressing either the activity, the risk, or the intent of the parties" and denied appellants' motion on that ground. Second, they argued the primary assumption of the risk doctrine should apply to preclude liability because Vinson assumed the risks inherent in climbing the wall. They argued that general negligence principles did not apply, and because there was no evidence that the operators increased the risk of injury beyond that inherent in the activity, a nonsuit should be granted. The court found the climbing of an inflatable rock wall was somewhere between a carnival ride and a sport. It concluded the doctrine did not apply and denied the motion for nonsuit.

The jury returned a verdict for Vinson, finding appellants were negligent and that their negligence caused Vinson's injuries. It awarded Vinson $70,620 in past economic damages, but nothing for future economic damages and nothing for the noneconomic damages he sought. Vinson moved for new trial limited to the issue of general damages or, in the alternative, for an addittur in an amount to be determined by the court. The court concluded there was no proper reason for the jury to award Vinson over $70,000 in

4

special damages yet find that he did not incur *any* pain and suffering as a result of the incident. It reasoned that even if the jury found Vinson was malingering, and thereby inflating his claim for general damages, awarding no noneconomic damages was improper. The court granted Vinson's motion for a partial new trial subject to appellants' consent to an additur in the amount of $80,000. Appellants declined to accept the additur, and this appeal followed.

## DISCUSSION

Appellants contend the trial court erred in denying their motion for nonsuit on two grounds. They argue the court should have found Vinson's signature on the Release precluded liability. They also argue that even if the Release did not bar the claim, voluntarily participating in the climbing activity involved an assumption of the risk that negated appellants' duty to eliminate the risks inherent in that activity.

Persons generally have a duty to use due care to avoid injuring others, and liability may result if their negligent conduct causes injury to another. (Civ. Code, § 1714; *Knight v. Jewett* (1992) 3 Cal.4th 296, 315.) However, a private party may expressly agree to release any claims of negligence against another by contract; such an agreement "is valid unless it contravenes public policy." (6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 1292, p. 686; see also *City of Santa Barbara v. Superior Court* (2007) 41 Cal.4th 747, 758 [future liability for ordinary negligence generally may be released].)[1] Implied

---

[1] Our Supreme Court has noted that California courts have invalidated releases of liability for ordinary negligence when it is determined that the "particular release concerns a service that transcends a purely private agreement and affects the public interest." (*City of Santa Barbara v. Superior Court*, *supra*, 41 Cal.4th at pp. 757–758.) But, private agreements made in connection with various sporting events or recreational activities generally have been upheld, as they do not involve necessary services and therefore do not contravene public policy or "transcend the realm of purely private matters." (*Id.* at p. 759.) We find this release, signed in consideration for participation in various activities at a private club, constitutes "a purely private agreement"; Vinson's participation in the rock-climbing activity did not involve necessary services and was a recreational activity well within the broad range of activities in which a number of California cases have upheld express waivers. (*Id.* at pp. 757, 759–760.)

assumption of the risk, on the other hand, involves exemption from liability based on the nature of a specific activity and the relationship of the parties to that activity, rather than on an express agreement. (*Amezcua v. Los Angeles Harley-Davidson, Inc.* (2011) 200 Cal.App.4th 217, 228.)

"To be effective, a written release purporting to exculpate a tortfeasor from future negligence or misconduct must be clear, unambiguous, and explicit in expressing the intent of the subscribing parties." (*Bennett v. United States Cycling Federation* (1987) 193 Cal.App.3d 1485, 1490, declined to follow by *Madison v. Superior Court* (1988) 203 Cal.App.3d 589, 602, fn. 9.) "'It is also necessary that the expressed terms of the agreement be applicable to the particular misconduct of the defendant . . . .' [Citation.]." (*Ibid.*, italics omitted.) "With respect to the question of express waiver, the legal issue is *not* whether the particular risk of injury [plaintiff] suffered is inherent in the recreational activity to which the Release applies [citations], but simply *the scope of the Release*." (*Cohen v. Five Brooks Stable* (2008) 159 Cal.App.4th 1476, 1484.)

The trial court denied appellants' motion for nonsuit based on the signing of the Release, concluding it did not apply to Vinson's claim because the "release [did] not ensure that [Vinson] knew the risks and hazards of this activity when he was signing a waiver of liability for negligence" on appellants' part. The court reasoned that the Release was "not clear, unambiguous, and explicit in expressing either the activity, the risk, or the intent of the parties."

Appellants argue the Release was explicitly intended to cover any activity at the Club and was sufficiently unambiguous to cover the activity at issue. They argue it was unnecessary to specifically identify rock-climbing as a covered activity, or the risks involved, in order for the Release to be effective. We agree.

Here, the plain language of the Release is explicit as to its breadth. According to its terms, the signer was releasing "any and all claims" against appellants based on "any and all injuries" resulting from "any accident" arising out of his or her "participation in any of the events or activities sponsored by the Club." Vinson argues the specific activity involved here, inflatable rock wall climbing, was not comprehended by the release.

6

Similarly, the trial court relied on the theory that the Release failed to identify the specific risk involved or that the risks were unknown to Vinson when he signed it. However, "[w]hen a release expressly releases the defendant from any liability, it is not necessary that the plaintiff have had a specific knowledge of the particular risk that ultimately caused the injury." (*Benedek v. PLC Santa Monica* (2002) 104 Cal.App.4th 1351, 1357.) "While it is true that the express terms of any release agreement must be applicable to the particular misconduct of the defendant [citation], that does not mean that every possible specific act of negligence of the defendant must be spelled out in the agreement or even discussed by the parties." (*Madison v. Superior Court* (1988) 203 Cal.App.3d 589, 601.) Furthermore, "[t]he inclusion of the term 'negligence' is simply not required to validate an exculpatory clause." (*Sanchez v. Bally's Total Fitness Corp.* (1998) 68 Cal.App.4th 62, 67.)

In *Sanchez v. Bally's Total Fitness Corp.*, *supra*, 68 Cal.App.4th at page 67, the court dealt with a release in the fitness center context. The court found the defendant health club unremarkably foresaw potential injuries to members of its club and rationally required them to sign a release and assumption of risk as a condition of membership. (*Ibid*.) The release broadly covered injuries "'arising out of or connected with the use of the fitness center.'" (*Id*. at p. 69.) The court found the release covered the injury suffered by the plaintiff as it occurred while using the fitness center.

In *Benedek v. PLC Santa Monica, supra*, 104 Cal.App.4th at page 1358, the court discussed a release signed by the plaintiff upon joining the defendant fitness center. The release stated the signer was waiving liability for injuries suffered while on the defendant's premises, "'whether using exercise equipment or not.'" (*Ibid*.) The court found the purpose of the release was to protect the defendant from future liability in consideration for granting the plaintiff access to defendant's premises. (*Ibid*.) The plaintiff was then injured while adjusting a television on defendant's premises. (*Id*. at p. 1355.) The court rejected the plaintiff's argument that the release should not apply to an activity which was secondary to his membership in the fitness center, especially when the risk of a falling television was not known to him at the time the release was signed.

7

(*Id*. at pp. 1357–1359.)  The court concluded that the broad, unambiguous language of the release served to preclude liability on the part of the defendant for any injuries suffered by plaintiff on defendant's premises.  (*Id*. at p. 1358.)

Here, Vinson signed a release of *all* claims for *any* injuries suffered on appellants' premises in consideration for membership in the Club and access to certain events.  Similar to the releases discussed in the cases above, we find the language of the release signed by Vinson broad and unambiguous.  The fact that the activity resulting in the injury was not specifically mentioned in the express terms of the release does not make it ineffective.  Having consented to release any claims against appellants based on injuries incurred while participating in *any* activities at the Club, Vinson absolved appellants of liability for ordinary negligence during his participation in this particular activity.

Because we have concluded Vinson expressly released appellants from liability, thereby serving as a bar to his claim of negligence, appellants' contentions regarding primary assumption of the risk are moot.

Appellants also contend the jury's decision to award substantial economic damages, but no noneconomic damages, was clearly a compromise verdict.  They argue the trial court's granting of a partial new trial solely on the issue of damages was an abuse of discretion, and a full new trial should have been ordered.  Again, we need not address this issue as we have concluded the negligence claim was precluded by Vinson's signing of the Release.

**DISPOSITION**

The judgment is reversed, and the case remanded with instructions.  Appellants to have their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

                                                                        EPSTEIN, P. J.

We concur:

MANELLA, J.

SUZUKAWA, J.